# EXHIBIT 18

 

August 13, 2020

*Via Email and Federal Express*

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Re:  **FREEDOM OF INFORMATION ACT APPEAL – ICE Case No. 2020-ICFO-67509**

To Whom It May Concern:

This is a Freedom of Information Act ("FOIA") appeal of the determination of Immigration and Customs Enforcement ("ICE") to deny expedited processing in connection with FOIA Request **2020-ICFO-67509** ("the request"), dated July 16, 2020.  The request seeks information on behalf of behalf of the Immigrant Defense Project ("IDP") and the Center for Constitutional Rights ("CCR"), collectively "the Requesters") for information regarding "Operation Palladium" and related records from the U.S. Immigration and Customs Enforcement agency ("ICE") and its components and offices.

ICE acknowledged our request in an email dated July 23, 2020 ("ICE Email," attached here at Attachment A). The ICE Email also granted our request for a fee waiver, and denied our request for expedited process. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), Requesters appeal ICE's denial of our request for expedited processing.

**Expedited Processing**

In their July 23, 2020 email, in regard to expedited processing, ICE confusingly provided multiple reasons for the denial. The agency wrote:

> *"ADD ONE OF THE FOLLOWING REASONS:*
> *Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your*

> *letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.*
>
> *Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You have not established that lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual. While you may be primarily engaged in the dissemination of information, you have not detailed with specificity why you feel there is an urgency to inform the public about the information you have requested. Qualifying urgency would need to exceed the public's right to know about government activity generally. You also did not offer sufficient supporting evidence of public interest that is any greater than the public's general interest in the information you have requested. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards."*

As written, ICE's response reads as boilerplate language, since it is unclear whether the author meant to "choose" one of the above reasons for the denial, but forgot to delete the other. Notwithstanding what appears to be a cut-and-paste error on the part of ICE, Requesters will respond to all listed reasons for denial, as ICE's reasoning is in error.

There is an obvious "compelling need" for the records Requesters seek, as well as an "urgency to inform the public concerning actual or alleged Federal Government activity." Requesters have also shown that they are "primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(ii).

As stated in our request, ICE's "Operation Palladium" generated national news when it was announced earlier this year.[1] The reasoning behind sending additional and massive ICE enforcement to cities across the country is frightening and unclear and it is in the immediate public interest to obtain information around it. Despite there being a global pandemic, ICE has publicly stated that it will continue to conduct enforcement nationally.[2]

Current events unfolding across the country, including the federal response to protests in Portland, OR and this Administration's indication that they will send Federal troops to other cities, makes our request even more urgent. There is more demand than ever for information around federal immigration troops descending into cities. DHS has planned to send immigration agents, potentially including ICE agents, into cities across the country months before the recent news of BORTAC and CBP agents at the Portland protests surfaced. Indeed, after it was

---

[1] See *The New York Times*, "'Flood the Streets': ICE Targets Sanctuary Cities With Increased Surveillance", March 5, 2020, available at: https://www.nytimes.com/2020/03/05/us/ICE-BORTAC-sanctuary-cities.html; *The Hill*, "ICE officers deployed to 'flood the streets' of sanctuary cities: report", March 5, 2020, available at: https://thehill.com/changing-america/resilience/refugees/486129-ice-deploying-hundreds-of-additional-officers-to; *The Washington Post*, Trump's immigration policies have already put lives at risk", March 22, 2020, available at: https://www.washingtonpost.com/opinions/trumps-immigration-policies-have-already-put-lives-at-risk/2020/03/22/54593c3a-6a1c-11ea-9923-57073adce27c_story.html.

[2] "Updated ICE statement on COVID-19", March 18, 2020, available at: https://www.ice.gov/news/releases/updated-ice-statement-covid-19

2

confirmed in early March 2020 that CBP's BORTAC agents were being sent to New York City and other jurisdictions, national news outlets reported that ICE agents were "flood[ing]" cities that had adopted policies limiting cooperation with immigration enforcement.[3] In the last two weeks, armed immigration-related law enforcement agents encountering protestors in Portland have been the subject of intense national media attention, and Congressional representatives have planned hearings to question the Department of Homeland Security and to inform the public about the activities of its component agencies.[4]

It is critical for the public to understand the policies and reasoning underlying the unusual use of DHS agents to engage in activities to control domestic protests, apparently against the wishes of states and localities where they have been deployed since March 2020.  Large numbers of civilians continue to be directly impacted by federal law enforcement through arrests, detentions, physical violence and more, and public interest in these actions is extremely high, with daily reports in broadcast as well as print media on developments.[5] The release of records relating to Operation Palladium and its potential connections to ongoing federal law enforcement activity taking place now will provide our constituent communities, along with the general public, vital information.

Finally, we again restate that both CCR and IDP are "*primarily engaged in the dissemination of information,*" as shown in our FOIA request.

---

[3] *See, e.g*., Caitlin Dickerson, Zolan Kanno-Youngs, & Annie Correal, *The New York Times,* "'Flood the Streets': ICE Targets Sanctuary Cities With Increased Surveillance," (March 5, 2020), available at: https://www.nytimes.com/2020/03/05/us/ICE-BORTAC-sanctuary-cities.html; Michelle Hackman, Trump Administration to Send 500 ICE Agents to Aid in Sanctuary City Arrests, *Wall Street Journal* (March 5, 2020), available at https://www.wsj.com/articles/trump-administration-to-send-500-ice-agents-to-aid-sanctuary-city-arrests-11583452147.

[4] *See The New York Times*, "Trump Threatens to Send Federal Law Enforcement Forces to More Cities", July 20, 2020.  Available at: https://www.nytimes.com/2020/07/20/us/politics/trump-chicago-portland-federal-agents.html; *The Guardian, "*Watching Trump's paramilitary squads descend on Portland, it's hard not to feel doomed", July 20, 2020. Available at: https://www.theguardian.com/commentisfree/2020/jul/20/trump-shock-troops-portland-doomed; *The Nation*, "The Border Patrol Was Responsible for an Arrest in Portland", July 21, 2020.  Available at: https://www.thenation.com/article/society/border-patrol-portland-arrest/
- *WBEZ Chicago,* "The Trump Administration Plans To Send 150 Federal Agents To Chicago To Help With Gun Violence", July 21, 2020.  Available at: https://www.wbez.org/stories/the-trump-administration-plans-to-send-150-federal-agents-to-chicago/d556fc89-e8d8-45fb-b01d-1bd4db119f83; *The Nation,* "The Federal Response to Protests Extends Far Beyond Portland", July 23, 2020.  Available at: https://www.thenation.com/article/society/cbp-deployment-harris/; *The Wall Street Journal,* "Elite Border Patrol Unit is Among Federal Agents Deployed to Portland" July 25, 2020.  Available at: https://www.wsj.com/articles/elite-border-patrol-unit-is-among-federal-agents-deployed-to-portland-11595689780

[5] *See, e.g.,* Devlin Barrett, Nick Miroff, Melissa J. Lang, & David Farenthold, "More federal agents dispatched to Portland as protests rise in other cities," *Washington Post* (July 27, 2020), available at https://www.washingtonpost.com/politics/more-federal-agents-dispatched-to-portland-as-protests-rise-in-other-cities/2020/07/27/20a717be-d03c-11ea-8d32-1ebf4e9d8e0d_story.html; Mark Berman & Nick Miroff, "Oregon governor says federal officers to withdraw from Portland. DHS says not yet," *Washington Post* (July 29, 2020), available at https://www.washingtonpost.com/national/portland-federal-officers-withdraw/2020/07/29/6a9106ae-d1be-11ea-9038-af089b63ac21_story.html.

\*\*\*\*

    I certify that the information relayed above is true and accurate to the best of my knowledge. The Requesters are available to discuss the fee waiver and expedited processing and can be contacted at (212) 614-6470.

    Sincerely,

    Ian Head
    Senior Legal Worker
    Center for Constitutional Rights
    666 Broadway, 7th Floor
    New York, NY 10012
    Phone: (212) 614-6445

# ATTACHMENT A



Ian Head &lt;ihead@ccrjustice.org&gt;

## ICE FOIA Request 2020-ICFO-67509
1 message

**ice-foia@dhs.gov** &lt;ice-foia@dhs.gov&gt;             Thu, Jul 23, 2020 at 10:54 AM
To: ihead@ccrjustice.org

July 23, 2020

Ian Head
Center for Constitutional Rights - DWN
666 Broadway, 7th Floor
New York, NY 10012

    RE:    ICE FOIA Case Number 2020-ICFO-67509

Dear Mr. Head:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated July 21, 2020, your request for a waiver of all assessable FOIA fees, and your request for expedited treatment. Your request was received in this office on July 21, 2020. Specifically, you requested records and data concerning the ICE surveillance and enforcement program "Operation Palladium" (see request for details).

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act regulations. These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met. I have considered the following factors in my evaluation of your request for a fee waiver:

    (1) Whether the subject of the requested records concerns "the operations or activities of the government";

    (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

    (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

    (4) Whether the contribution to public understanding of government operations or activities will be "significant";

    (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

    (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(I)(ii). Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(e)(3).

**ADD ONE OF THE FOLLOWING REASONS**:

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You have not established that lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual. While you may be primarily engaged in the dissemination of information, you have not detailed with specificity why you feel there is an urgency to inform the public about the information you have requested. Qualifying urgency would need to exceed the public's right to know about government activity generally. You also did not offer sufficient supporting evidence of public interest that is any greater than the public's general interest in the information you have requested. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

If you deem the decision to deny expedited treatment of your request an adverse determination, you have the right to appeal. Should you wish to do so, you must send your appeal and a copy of the original response letter, within 90 days of the date of the letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.8. You may submit your appeal electronically at GILDFOIAAppeals@ice.dhs.gov or via regular mail to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2020-ICFO-67509**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2020-ICFO-67509 tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia



**U.S. Department of Homeland Security**
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

September 11, 2020

Ian Head
Center for Constitutional Rights - DWN
666 Broadway, 7th Floor
New York, NY 10012

**RE: 2020-ICAP-00460, 2020-ICFO-67509**

Dear Mr. Head:

This is in response to your letter, dated August 13, 2020, appealing the adverse determination by the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office concerning your Freedom of Information Act/Privacy Act (FOIA/PA) request. You appealed the July 23, 2020 denial of a request for expedited processing by ICE FOIA. The initial request, filed by you on behalf of the Immigrant Defense Project and the Center for Constitutional Rights as organizations that engage in advocacy and public education on behalf of immigrant communities, with an interest in understanding the implementation and impact of ICE's Operation Palladium, was directed to the U.S. Department of Homeland Security (DHS). You requested the following:

1- DHS and ICE policies, memos or guidances relating to "Operation Palladium:"
   a) This includes policies, operating procedures, rules, internal policy guidance, training materials, monitoring mechanisms, legal opinions or memoranda;
   b) Any updates to ruse policies since the 2006 issuance of Torres' "Use of Ruses in Enforcement Operations" (3/6/2006) and Forman and Torres' "Use of Ruses in ICE Enforcement Operations" (8/22/2006);
   c) Protocols around Information-sharing;
   d) Any and all Records from any OHS components reflecting or memorializing ICE protocol for obtaining information or data that is used to identify targets for arrests, operations or any other at large apprehensions, including but not limited to protocols for obtaining information or data from other governmental agencies, local law enforcement agencies, district attorney offices, parole offices, departments of corrections, and probation offices.
2- DHS and ICE policies, memos, training materials or guidance relating to surveillance tactics.
3- Identification of Targets:
   a) Any and all Records regarding the process ICE uses to determine who to target as part of Operation Palladium;
   b) Manuals, policies, or other guidance describing the use of CLEAR database in ICE operations;
   c) Any and all records, including slides or other materials from trainings, on how target lists are built or created, including the keywords "TRSS" or "Thomson Reuters" or "CLEAR;"
   d) Target lists sent from ICE to Thomson ReutersffRSS and Thomson ReutersffRSS response

Ian Head
2020-ICAP-00460, 2020-ICFO-67509
Page **2** of **4**

          to those lists, including information regarding all personal data searched and lists of all targets confirmed or rejected as "false positives;"
          e) All related communications between ICE and Thomson Reuters/ TRSS including responses by ICE to the target lists.
4- Emails with the term "Operation Palladium" using its full name or any acronym or abbreviation, including "Palladium," between DHS or ICE and the New York Police Department ("NYPD") between the dates of 12/01/2019-3/31/2020.
5- Data from any Operation Palladium-related target list from the New York Field Office, including but not limited to arrest date, disposition, comments, nexus, and criminal history between l/l/2020-4/1/2020.
6- Field Operations Worksheets from the New York Field Office dated between 1/1/2020-4/1/2020.

DHS referred your FOIA request to ICE as well as the Office of Intelligence and Analysis, a separate component of DHS, for processing and direct response to you.

Your appeal of ICE's denial of your request for expedited processing, dated August 13, 2020, indicated the information sought was urgent to inform the public about the DHS's reasoning for sending ICE law enforcement personnel to certain U.S. cities.  Your appeal referred, generally, to events occurring in several locations, such as Portland, Oregon and New York City.
On appeal, ICE employs a *de novo* review of the denial of expedited treatment of your FOIA request.  As a requester, you bear the burden under the FOIA of showing that your request satisfies the requirements for expedited treatment.

In order for a requester to qualify for expedited processing, he must demonstrate a "compelling need."[1]  A "compelling need" requires either a showing "that a failure to obtain requested records on an expedited basis …could reasonably be expected to pose an imminent threat to the life or physical safety of an individual"[2] or "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."[3]  A requester within the category in paragraph (e)(1)(ii) of 6 C.F.R. § 5.5 must establish a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard."[4]

In the present instance, you have not provided any specific evidence showing that standard processing of the request would pose an imminent threat to the life or physical safety of a named individual.  Similarly, you have not demonstrated  there is an urgency to inform the public about an actual or alleged Federal Government activity beyond the public's right to know about government activity generally.

---

[1] 5 U.S.C. § 552(a)(6)(E)(i)(I)
[2] 5 U.S.C. § 552 (a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i)
[3] 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5 (e)(1)(ii)
[4] *See Landmark Legal Foundation v. E.P.A.*, 910 F.Supp.2d 270 (2012), at 277-78 (*quoting* H.R.Rep. No. 104-795 at 26 (1996), 1996 U.S.C.C.A.N. 3448,3469).

Ian Head
2020-ICAP-00460, 2020-ICFO-67509
Page **3** of **4**

We note that as an overarching principle, legislative history indicates that "[t]he specified categories for compelling need are intended to be narrowly applied." H.R.Rep. No. 104–795, at 26 (1996).[5] By requiring a "compelling need," the expedited access is intended to be limited to circumstances in which a delay in obtaining information can reasonably be foreseen to cause a significant adverse consequence to a recognized interest.[6]

Inasmuch as there has not been a specific showing that the subject of this FOIA request is "a matter of current exigency to the American public" and "whether the consequences of delaying a response would compromise a significant recognized interest" none of the reasons provided qualifies as an "urgency."[7] Additionally, you did not adequately prove the requested information will "not retain its value if procured through the normal FOIA channels."[8]

Further, a requestor must show a substantial, specific interest in the particular matter of the FOIA request.[9] Interest in an overarching umbrella issue does not satisfy this requirement. American interest in the activities of DHS component agencies is not sufficient to warrant expedited processing of a FOIA request pertaining to "Operation Palladium." Finally, a substantial amount of information regarding "Operation Palladium" is already in the public domain, as highlighted by your references to several articles published by mainstream media outlets such as the New York Times, the Washington Post, the Wall Street Journal, The Nation, and The Guardian.

Upon complete review of the administrative record, the denial of expedited processing was proper in all respects under the applicable provisions of 5 U.S.C. § 552 and 6 C.F.R. § 5.5 cited above.

This decision is the final action of U.S. Immigration and Customs Enforcement concerning your request for expedited processing of FOIA request 2020-ICFO-67509. Inasmuch as you consider this to be a denial of your appeal, you may obtain judicial review of this decision pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you reside, or have a principal place of business, or in which the agency records are situated, or in the District of Columbia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Should you have any questions regarding this appeal closure, please contact ICE at ICE-FOIA@ice.dhs.gov. In the subject line of the email please include the word "appeal," the appeal number, which is 2020-ICAP-00460, and the FOIA case number, which is 2020-ICFO-67509.

---

[5] *See Al-Fayed v. C.I.A.,* 254 F.3d 300, 310 (D.C. Cir. 2001).
[6] *Id*. at 311.
[7] *Id.* at 310.
[8] *See Long v. Dep't of Homeland Sec*., 436 F.Supp.2d 38, 43 (D.D.C. 2006).
[9] *See ACLU of N. Cal. v. D.O.J.*, No. 04-447, 2005 WL 588352 at *13 (N.D. Cal. March 11, 2005), where the Court ruled in the expedited processing context it is not sufficient for a requester to show general public interest in the general matter of the request.

Ian Head
2020-ICAP-00460, 2020-ICFO-67509
Page **4** of **4**

                                            Sincerely,

                                            *Angela M. Fiorentino-Rios*

                                   for Shiraz Panthaky,
                                       Chief
                                       Government Information Law Division
                                       ICE Office of the Principal Legal Advisor
                                       U.S Department of Homeland Security

cc: The ICE FOIA Office