# EXHIBIT 21

 

May 25, 2022

*Via Federal Express*

FOIA Officer
U.S. Customs and Border Protection
90 K Street, NE
FOIA Division
Washington, DC 20229

U.S. Department of Homeland Security
Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-065

**Re: Freedom of Information Act Request**

To Whom it May Concern:

      This is a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), on behalf of the Immigrant Defense Project ("IDP") and the Center for Constitutional Rights ("CCR") (collectively "the Requesters") to the U.S. Customs and Border Protection ("CBP") and the U.S. Department of the Homeland Security ("DHS") for information relating to Operation Palladium, Operation "SUB zERO",  "50/50 CBP Assist" and other CBP participation in related ICE and DHS immigration enforcement, policing and/or "surge" operations. We ask that CBP and DHS please direct this request to all appropriate offices, departments, and sub-entities within your respective agencies.

**Purpose of Request**

      This request is in regards to records and data concerning the DHS/CBP/ICE surveillance and surge enforcement program(s) that relate to "Operation Palladium."[1] As organizations that engage in advocacy and public education on behalf of immigrant communities, IDP and CCR have an interest in understanding the implementation and impact of surge operations relating or leading up to Operation Palladium, their development, and the agencies' goals in developing and

---

[1] This FOIA Request follows up on a previous FOIA sent by Requesters to ICE and DHS in June 2020, which is now being litigated in the Southern District of New York. See <u>Immigrant Defense Project, et al v. U.S. Immigration and Customs Enforcement, et al.</u> Dkt. 20-cv-10625.

enforcing these programs. Because the Requesters disseminate policy and educational materials to the public for no cost, information obtained from this FOIA request will better enable communities they represent as well as the general public in understanding why CBP and DHS and any other involved agencies and departments have implemented these programs and their effects.

### A. Definitions

- <u>Record(s).</u> In this request the term "record(s)" includes, but is not limited to, all Records or communications preserved in electronic (including metadata) or written form, such as correspondences, emails, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, legal opinions, protocols, reports, rules, talking points, technical manuals, technical specifications, training manuals, studies, or any other Record of any kind.
- <u>Agreement(s).</u> In this request the term "agreement(s)" refers to any agreement, written or otherwise; communications; contracts and/or supplements, modifications or addendums to contracts or agreements.
- <u>Communication(s).</u> In this request the term "communication" means the transmittal of information (in the forms of facts, ideas, inquiries or otherwise).
- <u>Local Government(s).</u> In this request the term "local" government includes state/local government, municipal corporations, tribal governments, tribal business entities, and Alaska Native Corporations.
- <u>Target lists</u>[2]. In this request the term "target list(s)" means any list(s) of individuals and associated data and associated data assembled and/or created by any government agency or privately-contracted vendor for a government agency that is sent and/or used by any component of DHS to identify, track, surveil and/or arrest people.

### B. Request for Information

1. Emails with the terms "Palladium," "SUB-zERO," "50/50 CBP Assist" using the full term and any related acronym or abbreviation, between CBP or DHS and any other federal agencies between the dates of 12/01/2019-3/31/2020.

2. Emails with the terms "Palladium," "SUB-zERO," "50/50 CBP Assist" using the full term and any related acronym or abbreviation, between CBP or DHS and the New York City Police Department ("NYPD") between the dates of 12/01/2019-3/31/2020.

---

[2] "Target lists" include those compiled with data provided by outside vendors through automated and non-automated services. *See*

3. Emails or other communications by CBP or DHS officials, agents, contractors or other employees regarding subject matter reported on in the article by Caitlin Dickerson and Zolan Kanno-Youngs, "Border Patrol Will Deploy Elite Tactical Agents to Sanctuary Cities," published in the New York Times on February 14, 2020. This includes any emails to or from CBP officials Mark Morgan, Tim Sullivan, and/or Lawrence Payne.

4. Emails or other communications by CBP or DHS officials, agents, contractors or other employees regarding subject matter reported on in the article by Caitlin Dickerson, Zolan Kanno-Youngs and Annie Correal, "Flood the Streets': ICE Targets Sanctuary Cities With Increased Surveillance," published in the New York Times on March 5, 2020. This includes any emails to or from CBP officials Mark Morgan, Tim Sullivan, and/or Lawrence Payne.

### C. Format of Production

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records. Please provide the requested documents in the following format:

- Provided via email or on a CD, DVD, hard drive or other hardcopy media;
- In PDF format wherever possible;
- Electronically searchable wherever possible;
- Each paper record in a separately saved file;
- "Parent-child" relationships maintained, meaning that the Requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields;
- With any other metadata preserved.

### D. Requesters

<u>Immigrant Defense Project</u> is a non-profit organization whose mission is to promote fundamental fairness for immigrants accused or convicted of crimes. IDP works to protect and expand the rights of immigrants who have contact with the criminal legal system, including: 1) working to transform unjust deportation laws and policies; 2) minimizing the harsh and

disproportionate immigration consequences of contact with the criminal legal system; and 3) educating and advising immigrants, their criminal defenders, and other advocates. IDP disseminates information about the immigration system to the public in accessible ways and is a leader in providing training and support for legal practitioners, community based organizations, and community members. IDP provides expert information and community-based education on immigration enforcement tactics, including surveillance practices, and possible legal and policy remedies.

The <u>Center for Constitutional Rights</u> ("CCR") is a non-profit, public interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-you-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments.  CCR operates a website, http://ccrjustice.org, which addresses the issues on which the Center works. CCR staff members often serve as sources for journalist and media outlets, including on issues related to racial justice, police brutality, racial discrimination, and the right to dissent. In addition, CCR regularly issues press releases, has an active social media presence with thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

### E. Request for Fee Waiver

The Requesters are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that "disclosure of the requested records is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Requesters meet the requirements for a fee waiver because the subject of the request concerns the operations or activities of the government, the disclosure of the information is likely to contribute to a significant public understanding of government operations or activities, the Requesters' primary interest is in disclosure; and they have no commercial interest in the information. See 6 C.F.R. 5.11(b).

As described in above, the Requesters are non-profit organizations dedicated to educating the public and advocating for civil rights, human rights, and immigrant rights, and have undertaken this work in the public interest and not for any private commercial interest. Similarly, the primary purpose of this FOIA request is to obtain information to further the public's understanding of federal immigration actions and policies, and their effects on immigrant communities. Access to this information is crucial for Requesters and the communities they

serve to evaluate government procedures and actions, as well as their potential detrimental effects.

Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case therefore meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters.'").

In the alternative, if no fee waiver is granted and the fees exceed $250.00, please contact the Requesters to obtain consent to incur additional fees. Processing fees should be limited pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media.").

F.  **Request for Expedited Processing**

Expedited processing of this request is required because there is a "compelling need" for the information.  *See* 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" may exist where there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and the requesting party is "primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(ii).

There is an urgent need to inform the public of the policies and decision-making regarding enforcement operations, specifically on Operation Palladium. Operation Palladium has already generated national news, as it was first reported in the *New York Times* on March 5, 2020 and has been reported by other national news media.[3] Release of these records is a matter of importance and urgency. The proposed DHS budget for 2023 does not indicate any apparent reduction in DHS, ICE, and CBP policing power—indeed the current presidential budget proposal calls for an increase in Border Patrol and other CBP agents. In other words, DHS continues to have similar staffing capacity to conduct surge forces similar to Palladium in the near future, and information about the program is crucial to IDP's work in educating the public about raids and other enforcement actions by DHS, ICE, and CBP. It is therefore critical that communities have as much information available to prepare and defend their rights. Additionally, journalists, as well as local, state, and federal elected officials regularly consult

---

[3] See *The New York Times*, "'Flood the Streets': ICE Targets Sanctuary Cities With Increased Surveillance", March 5, 2020, available at: https://www.nytimes.com/2020/03/05/us/ICE-BORTAC-sanctuary-cities.html; *The Hill*, "ICE officers deployed to 'flood the streets' of sanctuary cities: report", March 5, 2020, available at: https://thehill.com/changing-america/resilience/refugees/486129-ice-deploying-hundreds-of-additional-officers-to; *The Washington Post*, Trump's immigration policies have already put lives at risk", March 22, 2020, available at: https://www.washingtonpost.com/opinions/trumps-immigration-policies-have-already-put-lives-at-risk/2020/03/22/54593c3a-6a1c-11ea-9923-57073adce27c_story.html.

IDP about DHS, CBP, and ICE activities in New York and nationally. The records we are requesting are crucial for our ongoing work advising and supporting communities and individuals impacted by DHS, CBP, and ICE tactics and policies—in particular those that target the New York metropolitan area.

### G. Conclusion

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. *See* 6 C.F.R. §5.5(e)(3). If this Request is denied in whole or in part, Requesters' ask that DHS and CBP justify all deletions by reference to specific exemptions of FOIA. The Requesters expect CBP and DHS to release all segregable portions of otherwise exempt material, and reserves the right to appeal a decision to withhold any records or to deny the within application for expedited processing or fee waiver.

If you have any questions regarding the processing of this request, please do not hesitate to contact Ian Head at:

Ian Head
ihead@ccrjustice.org *(preferred)*
Center for Constitutional Rights
PO Box 31001
Los Angeles, CA 90031

        Thank you,

        *[signature]*

        Ian Head
        Senior Legal Worker and
        Open Records Project Coordinator
        Center for Constitutional Rights